UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:06-CV-222-D(3)

| ALICE LANGLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for Judgment on the Pleadings **[DE-21 & 27]**. The time for the parties to file any responses or replies has expired. Accordingly, These motions are now ripe for adjudication. Pursuant to 42 U.S. C. § 405(g) and § 1383(c)(3), the underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's application for Disability Insurance Benefits. Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for a memorandum and recommendation. For the reasons set forth herein, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings **[DE-21]** be DENIED and Defendant's Cross-Motion for Judgment on the Pleadings **[DE-27]** be GRANTED.

**Statement of the Case**

Plaintiff applied for DIB on July 27, 2003, alleging that she became unable to work on June 14, 2003 (Tr. 48-50, 70). This application was denied at the initial and reconsideration levels of review. Id. at 36-39, 41-43. A hearing was held on June 1, 2005 before an Administrative Law Judge ("ALJ") who found Plaintiff was not disabled during the relevant time period in a decision dated September 21, 2005. Id. at 15-21. On September 28, 2006, the Social Security

Administration's Office of Hearings and Appeals denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of Defendant. Id. at 4-6. Plaintiff filed the instant action on November 2, 2006 **[DE-6]**.

## Standard of Review

The Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

Id. "Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, it is this Court's duty to determine both whether the Commissioner's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## Analysis

The Social Security Administration has promulgated the following regulations which establish a five-step sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520©. If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f). Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment. (Tr. 19). At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: 1) obesity, 2) hypertension, 3) arthritic back pain, 4) abdominal pain, 5) diabetes mellitus, 6) sleep apnea, and 7) fibromyalgia. Id. at 16. In completing step three however, the ALJ determined that these impairments were not severe enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Id.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC) to perform a significant range of light work. Id. at 17-19. Based on this finding, the ALJ concluded that Plaintiff could not perform any of her past relevant work. Id. Finally, at step five, the ALJ found that the Medical-Vocational Guidelines ("Grids")

3

Rule 202.10 directed a finding that Plaintiff was not disabled at any time through the date of his decision. Id. at 20. In making these determinations, the ALJ cited substantial evidence, a summary of which now follows.

Plaintiff has sought treatment for several diagnoses over the past couple of years. Her medical records indicate that she suffers from a history of hypertension. Id. at 16, 245, 332. However, her hypertension is controlled with medication and is not associated with chronic heart failure or ischemic heart disease as required by Listing 4.03. Id. at 16; See 20 C.F.R. Part 404, Subpart P, App. I. . In addition, Plaintiff exhibits osteoarthritic changes in her lumbosacral spine, but she still has a full range of motion in her spine and extremities with normal reflexes and normal sensation. Id. at 16, 242, 323. Thus, her condition does not satisfy the requirements of Listing 1.04. See 20 C.F.R. Part 404, Subpart P, App. I.

During an examination in November 2003, Plaintiff was diagnosed with a small hiatal hernia after complaints of abdominal pain. Id. at 17, 325. However, her records do not indicate that she suffered from peptic ulcer disease, upper gastrointestinal hemorrhaging, a stricture, stenosis, or any other severe digestive impairment that would cause significant weight loss as set forth in Listing 5.02 or the other listings under digestive system impairments. Id. at 17; See 20 C.F.R. Part 404, Subpart P, App. I. Plaintiff has been diagnosed with diabetes for several years. Id. at 17, 370. However, her diabetes has not resulted in significant neuropathy, frequent acidosis, or retinitis proliferans, which is required by Listing 9.08. Id. at 17; See 20 C.F.R. Part 404, subpart P, App. I.

Plaintiff has been treated for fibromyalgia diagnoses and complaints of pain in her hands. Id. at 17, 228, 230, 231, 242. However, neither of these conditions was severe enough to satisfy

Listing 11.14, which requires significant and persistent disorganization of motor function in two extremities. Id. at 17; See 20 C.F.R. Part 404, Subpart P, App. I. Plaintiff has been consistently diagnosed with obesity, without any significant weight loss noted. Id. at 17, 226, 237, 245, 282, 284, 308. Nonetheless, when considering the effect her obesity may have on her other impairments, it is not severe enough to meet a listed impairment. Id. at 17; See 20 C.F.R. Subpart 404, App. I, 3.00(I).

In January 2004, Plaintiff had x-rays taken of her lumbosacral spine. Id. at 17, 323. The x-rays exhibited osteoarthritic changes of the spine with normal alignment, the sacroiliac joints were normal, and there was only mild disc height narrowing at L5-S1. Id. No progression in the spine from the earlier x-rays taken in August 2003 was noted. Id. Plaintiff's x-rays of her left hip were normal as well. Id. In March 2004, Plaintiff was diagnosed with osteoarthritis and chronic back pain. Id. at 17, 307. Subsequently, in December 2004, she was diagnosed with arthralgias as a result of joint pain in her knee, ankle, and lower back. Id. at 17, 264.

In February 2005, an examination revealed that Plaintiff had a good range of motion in both her upper and lower extremities, but she did have tender points in the localized area of her fibromyalgia, as well as nonspecific points. Id. at 17, 244. During this same month, Plaintiff was referred for physical therapy to address her complaints of joint pain in multiple joints. Id. at 17, 245. Records from her physical therapy session in March 2005 indicate that the Plaintiff was able to perform all of the exercises set out for her in her program and was she encouraged to start a home walking program for exercise. Id. at 17, 228.

In addition to the complaints of her joint pain, Plaintiff also has a history of gastrointestinal

5

problems. Id. at 17. As noted above, Plaintiff was diagnosed with a small hiatal hernia. Id. at 17, 325. She has also been treated for small bowel obstruction with periodic episodes of nausea, vomiting, and other bowel conditions. Id. at 17, 225, 288. However, medical records during an examination in October 2004 indicate Plaintiff's gastrointestinal problems had slightly improved because she did not have complaints of diarrhea, constipation, change in bowel habits, abdominal pain, melena, or hematochezia. Id. at 17, 282. Similarly, her records also indicate that in April 2004, her hypertension was under good control. Id. at 18, 303. Furthermore, her diabetes mellitus is not insulin dependent and can be controlled with her medications, a consistent exercise program, and dietary modifications. Id. at 18, 255, 300, 303.

In February and March of 2005, Plaintiff was diagnosed with sleep apnea. Id. at 18, 216-20. However, past examinations reveal that her condition has not been associated with a severe pulmonary impairment because she does not have intercostal retractions or use of accessory muscles and auscultation shows no rales, rhonci or wheezes. Id. at 18, 263,268,278,283,290, 339.

During the hearing in this matter, Plaintiff testified that she is unable to work because of the combination of her impairments with accompanying pain and low energy levels. Id. at 18, 365-67, 374. She also testified that she takes several medications for her impairments, but they cause side effects including headaches, nausea, and sleepiness. Id. at 18, 372-73. Plaintiff reported that her daily activities consist of staying around the house, sleeping during the day, watching television, telephoning friends, and making her meals while sitting down. Id. at 18, 377-78. Plaintiff's sister does her chores and other housework. Id. at 18, 378.

With regard to Plaintiff's testimony, the ALJ made the following findings:

6

>  While the claimant's daily activities are limited, this limitation appears to be self-imposed as the claimant has not been instructed by a physician to limit her daily activities. Neither has the claimant been instructed by a physician to refrain from engaging in light work. Rather, the claimant has been referred for physical therapy treatment and has been instructed in an exercise program, including walking. The claimant was noted to be very deconditioned when she started physical therapy but was noted to be able to bathe, dress, walk and drive independently. While the claimant has been prescribed medication, the evidence shows she has not always been compliant with her hypertensive medication. With medication compliance, the evidence shows the claimant's impairments can be better controlled. The claimant has not been prescribed extensive pain medication. If the claimant were experiencing severe, intractable pain, it is reasonable to assume she would report this information to a physician and her medication would be adjusted. For these reasons, the claimant's subjective allegations are not considered fully credible.

Id. at 18-19.

After weighing this evidence, the ALJ determined that Plaintiff retained the RFC to perform light work. Id. at 17-19. Specifically, the ALJ found that:

> [t]hese records show the claimant is not precluded from engaging in light work where she would not have to lift and carry or push and pull more than 20 pounds occasionally and ten pounds frequently. The claimant is capable of standing and walking up to six hours and sitting throughout an eight-hour work day.

Id. at 17.

Finally, the ALJ concluded that since Plaintiff retains the capacity for work that exists in significant numbers in the national economy, she did not have a "disability" as defined by the Social Security Act, at any time through the date of his decision. See 20 C.F.R. § 404.1520(g).

Based on the foregoing record, the Court hereby finds that there was substantial evidence to support the ALJ's conclusions. The undersigned shall now address Plaintiff's specific arguments.

## **Analysis of Plaintiff's Argument**

In Plaintiff's first argument, she contends that the ALJ improperly assessed her credibility. Specifically, Plaintiff argues "[a]n adjudicator cannot summarily dismiss a claimant's subjective complaints regarding her disability including her complaints of pain . . ." **[DE-21, p. 6]**. In support of her argument, Plaintiff asserts that the ALJ did not consider the cumulative effect of her impairments by failing to take into account medical evidence regarding Plaintiff's back pain, gastrointestinal problems, diabetes, and other physical conditions. **[DE-21, pgs. 7-9]**. By discounting her allegations, Plaintiff alleges that the ALJ's determination that she can perform a full range of light work is not supported by substantial evidence. **[DE-21, p. 6]**. For the following reasons, the undersigned finds Plaintiff's argument to be without merit.

In assessing a claimant's credibility, an ALJ must consider the entire case record, giving specific reasons for the weight to be given to the individual's statements, and must consider specific factors in his or her assessment. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. In this case, the ALJ properly addressed Plaintiff's credibility according to the regulations and Social Security Rulings. In the order the ALJ stated:

> [t]he undersigned has not required the presence of objective medical evidence in determining the intensity and persistence of the pain and other symptoms alleged. Rather, the Administrative Law Judge has specifically considered the nature, location, onset, duration, frequency, radiation, and intensity of any symptom, including pain; the precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of any medication; the treatment, other than medication for relief of pain or other symptoms the claimant has undergone; the alleged functional restrictions; and the claimant's daily activities.

(Tr. 18)

Contrary to Plaintiff's argument, the ALJ did not summarily dismiss her subjective complaints. Rather, he weighed all of the evidence in the record and found that some of Plaintiff's

8

allegations were not supported by the medical evidence. (Tr. 18).

**1.      Back Pain**

First, Plaintiff takes issue with the ALJ's assessment of her back pain by relying on a medical record that the ALJ cited in his opinion. **[DE-21]**. According to Plaintiff, the ALJ's failure to cite additional statements made by the doctor within the record "undermines [the ALJ's] finding of a light exertion level because it fails to take Mr. Langley's pain symptoms into consideration." **[DE-21, p. 7]**. However, as noted above, the ALJ did not consider this medical evidence in isolation; other evidence in the record supports his conclusions.

Plaintiff's back impairment has been diagnosed as osteoarthritic changes in her lumbosacral spine. (Tr. 16-17). However, despite this diagnoses, the record reflects that during several medical examinations, Plaintiff had no complaints of back pain (Tr. 237, 297) and demonstrated normal alignment and mobility in her spine. Id. at 298. In addition, x-rays of Plaintiff's spine indicate normal alignment, normal sacroiliac joints, and only mild disc height narrowing at L5-S1. Id. The medical record also revealed that Plaintiff's back condition is non-progressive. Id.

Furthermore, treatment records from February 2005 mentioned that Plaintiff had a good range of motion in her upper and lower extremities with some tender points noted. Id. This record also indicates that Plaintiff was sensitive to touch as a result of her fibromyalgia. Id. at 244. In her brief, Plaintiff claims that the ALJ "attack[ed] [her] back pain" by failing to include the additional comments about her fibromyalgia. **[DE-21, p. 7]**. As a result of this failure, Plaintiff reasons that the ALJ's assessment of her pain symptoms is "undermined." Id. However, nothing in this record supports the Plaintiff's assertion that she is incapable of performing light work.

9

Instead, statements by Plaintiff's own treating physician, Dr. David Michael, substantiate the ALJ's conclusion regarding her back pain. For a follow-up visit in November 2003, Plaintiff brought the doctor "disability papers" to fill out in reference to her back impairment. Id. at 329. During this examination, the doctor noted that Plaintiff's x-rays of her spine exhibited osteoarthritic changes, but with no significant progression since December 2001. Id. at 329. The doctor also asked Plaintiff questions regarding her daily activities. Id. Based on her statements, the doctor opined "I had not gotten the sense that her back pain was debilitating." Id.

In sum, these records reflect that Plaintiff may have been suffering from back pain due to her osteoarthritic condition, however, they do not contradict the ALJ's assessment of Plaintiff's back pain or his conclusion that Plaintiff is capable of performing light work.

**2.     Gastrointestinal Problems**

Next, Plaintiff contends that the ALJ failed to consider significant medical evidence regarding the nature and extent of her abdominal pain. **[DE-21, p. 8]**. This argument is incorrect. The ALJ specifically noted in his decision that "[t]he claimant has a history of a small hiatal hernia and small bowel obstruction with some continuing complaints of gastrointestinal problems, including episodes of nausea, vomiting, and bowel problems." (Tr. 17). However, by weighing the medical evidence in the record, the ALJ concluded that "the claimant's gastrointestinal problems would not affect her ability to engage in light work." Id.

The evidence that the ALJ cited support of his assessment includes an examination in October 2004 where the Plaintiff denied complaints of diarrhea, constipation, change in bowel habits, abdominal pain, melena, hematochezia, and jaundice. Id. at 17, 282. Despite these

10

references, Plaintiff still takes issue with the fact that the ALJ did not mention her treatment at the Emergency facilities for nausea and vomiting as well as testing that has been done in the past to determine the cause of Plaintiff's gastrointestinal problems. **[DE-21, p. 8].** However, while Plaintiff's medical records do indicate that she has received consistent treatment for her abdominal conditions, none of these records demonstrate that she is unable to perform light work.

For example, when she was seen by her doctor in December 2002, for a partial small bowel obstruction, it was resolved with conservative therapy. Id. at 293. In addition, testing has revealed normal results on an upper endoscopy (Tr. 119, 147, 225), abdominal series (Tr. 153), as well as an Upper GI series, which confirmed that there were no abnormalities in Plaintiff's esophagus, stomach, or duodenum. Id. at 286. Moreover, Plaintiff has reported to her doctors on several occasions that she was not experiencing abdominal tenderness (Tr. 223, 262, 263, 297, 321) or only mild abdominal pain (Tr. 348). However, some of these records also indicate that when Plaintiff reported tenderness in her abdomen, "[s]he had an exaggerated response to a light touch of her abdomen," (Tr. 293) and at times her symptoms diminished when she was distracted. Id. at 283, 290. Thus, this evidence supports the ALJ's conclusion that while Plaintiff has had a history of gastrointestinal problems, these conditions will not prevent her from performing light work. Therefore, Plaintiff's argument is without merit.

### 3.     **Obesity and other conditions**

By relying on Social Security Ruling 02-1p, Plaintiff next asserts that the ALJ failed to consider the severity of her obesity in relation to its impact on her other impairments. **[DE-21, p.**

11

**9]**. Specifically, the fact that her Body Mass Index "falls in the area of extreme obesity representing the greatest risk of developing obesity-related impairments." Id. Plaintiff's treatment records confirm that she has been consistently diagnosed with morbid obesity over the past couple of years. Id. at 282, 293, 303, 304, 308, 332. These records also indicate that her obesity contributed to her other impairments including her diabetes, sleep apnea, and back pain. Id. at 216, 255, 303, 307, 311, 332.

In his order, the ALJ concluded, "[t]he claimant was diagnosed with obesity without any significant weight loss noted." Id. at 17. The ALJ further stated, "the claimant's obesity, when considering its effect on her impairments, [is not] sufficiently severe so as to meet a listed impairment." Id. Plaintiff alleges that the ALJ "should have provided more analysis of the effects of obesity on Ms. Langley's impairments than just one sentence." **[DE-21]**. However, this contention fails to take into account the substance of the ALJ's decision, which has been previously discussed above. The ALJ analyzed all of the medical evidence contained in the record and weighed this evidence when making the determination that Plaintiff's obesity was not sufficiently severe, in combination with her other impairments, to meet a listed impairment. The ALJ's conclusion is supported by substantial evidence.[1] Therefore, Plaintiff's argument is without merit.

---

[1] It should be noted that Plaintiff's treating physicians have consistently encouraged her to maintain an exercise program and augment her diet to lose weight. (Tr. 228, 255, 284, 298, 303, 308, 311). Weight loss has been recommended because it would have a significant impact on her other impairments. Id. at 284. For example, her physicians have reported that weight loss reduction would eliminate the need for the CPAP machine treating Plaintiff's sleep apnea (Tr. 216), could better control her diabetes (Tr. 307, 311), improve her osteoarthritis (Tr. 264), and decrease the pain associated with her fibromyalgia and other conditions (Tr. 228). However, her physicians have also reported that Plaintiff has declined nutritional counseling on several occasions (Tr. 284, 282 308), was reluctant to make changes to her lifestyle (Tr. 284) and during physical therapy sessions had "questionable" motivation (Tr. 231). Thus, while Plaintiff argues that it was error for the ALJ not to consider her obesity in relation to her other impairments, her treatment records indicate that she can improve her quality of living through increased exercise and

In addition to the assessment of her obesity, Plaintiff also challenges the ALJ's conclusion regarding her diabetes and hypertension. **[DE-21, pgs. 9-10]**. Basically, she alleges that both conditions are severe enough to affect her ability to perform light work. **[DE-21, p. 10].** This argument is meritless. In his order, the ALJ notes that neither Plaintiff's diabetes nor hypertension was severe enough to meet a listed impairment because they both could be controlled with medication, exercise, and diet. (Tr. 16, 17-18). Significantly, the Fourth Circuit has held, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). It should also be noted, that in her brief and the record, Plaintiff admits that her "diabetes and hypertension have been under good control," and that she has been able to keep them "under control with medication, exercise and diet . . ." **[DE-21, p. 10]**; (Tr. 114, 371).[2] Thus, since these conditions can be controlled through treatment, they are not disabling. Therefore, Plaintiff's argument lacks merit.

### 4. Congestive Heart Failure

Plaintiff's final argument involves a letter that she submitted to the Appeals Council from her treating physician, Dr. Ramirez, subsequent to the hearing conducted by the ALJ. (Tr. 356). Plaintiff relies on SSR 96-5p to assert, "when a treating source opinion is introduced into the record,

---

change in diet.

[2] In her brief, Plaintiff takes issue with the ALJ citing her lack of compliance with her medications as a justification for concluding that she can perform light work. [DE-21, p. 10]. She alleges that her non-compliance is involuntary because she cannot afford the medications. Id. The record supports that Plaintiff's financial difficulties impact her treatment. (Tr. 300, 304, 307, 334, 348-49). However, it also indicates that she admitted that "whenever she comes to the doctor she does not take her medications so that [the doctors] 'can see her the way she is.'" Id. at 239. This volitional failure to take her medications caused her blood pressure to be elevated, which prompted Dr. Ramirez to counsel her against this practice. Id.

13

the Commissioner is under an obligation to provide subsequent reviewing courts the rationale by which the Commissioner rejected the treating source opinion." **[DE-21, p. 12]**. Basically, Plaintiff contends that the Commissioner should be required to fully explain why Dr. Ramirez's opinion did not change the outcome in her case. For the reasons that follow, the undersigned concludes that Plaintiff's argument lacks merit.

Traditionally, when a claimant submits additional evidence to the Appeals Council, the Council must consider three factors in deciding whether to grant review: whether the evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. King v. Barnhart, 415 F. Supp. 2d 607, 609 (E.D.N.C. 2005) (citing Wilkins v. Secretary, Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991) (*en banc*). "The [Fourth Circuit Court] defined evidence as being new if it is not duplicative or cumulative, and as 'material' if there is a reasonable possibility that the new evidence would have changed the outcome." King, 415 F. Supp. 2d at 609 (internal quotations omitted); Wilkins, 953 F.2d at 96. Ultimately, if the Appeals Council does consider the new evidence, it must explain its evaluation of this evidence. Balthis v. Apfel, No. 2:00CV00034, 2001 U.S. Dist. LEXIS 24601 at *8 (W.D. Va. Feb. 13, 2001) affirmed sub. nom., Balthis v. Massanari, No. 01-1362, 2001 U.S. App. LEXIS 20878 (4th Cir. 2001).

However, the Fourth Circuit has consistently concluded that the Appeals Council "need not announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision." Balthis, 2001 U.S. Dist. LEXIS at *8, n. 2; See King, 415 F. Supp. 2d at 610-11 (disagreeing with other district courts that a detailed assessment by the Appeals Council is necessary when new evidence is submitted); See also Hollar v. Commissioner of the SSA, No. 98-2748, 1999

U.S. 23121, at *3-4 (4th Cir. Sept. 23, 1999) (agreeing with the Eighth Circuit Court's conclusion that "the regulation [20 C.F.R. § 404.970(b)] addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision"); Chavis v. Shalala, No. 93-1915, 1994 U.S. App. LEXIS 16555, at *10, n.5 (4th Cir. July 5, 1994) (rejecting the plaintiff's argument that the Appeals Council "did not sufficiently explain the weight it gave to the new evidence" because the Appeals Council simply stated it considered the new evidence, but "the evidence did not provide a basis for reversing the ALJ's decision").[3]

In this case, Plaintiff submitted post-decisional evidence from her treating physician that alleged that she has been diagnosed with congestive heart failure, admitted to the hospital several times for this condition, and as a result of said condition, is incapable of performing simple tasks, sedentary work, or walking 15 feet without presenting shortness of breath. (Tr. 357). The Appeals Council noted that it considered this additional evidence when determining whether to grant review. Id. at 4. However, it concluded that this evidence "did not provide a basis for changing the Administrative Law Judge's decision." Id. at 5. Although Plaintiff asserts "remand would be appropriate to allow the Commissioner to more fully explain the reasoning behind its rejection of

---

[3] Other Circuit Courts have reached the same conclusion about an Appeals Council's evaluation of new evidence. See e.g., Hackett v. Barnhart, 395 F.3d 1168, 1172-73 (10th Cir. 2005) (stating "[p]laintiff complains that the Appeals Council's reference to the state proceeding was perfunctory-the Appeals Council wrote only that it had considered the additional evidence submitted but concluded that neither the contentions or additional evidence provides a basis for changing the Administrative Law Judge's decision. Yet, our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter") (internal quotation marks omitted); Damato v. Sullivan, 945 F.2d 982, 988-99 (7th Cir. 1990) (holding "[w]hen the Appeals Council *denies* review in accordance with its discretion under 20 C.F.R. § 416.1467, the rationale for requiring articulation of its reasoning is absent, since the denial is not subject to judicial")

15

the treating source opinion," further explanation is not needed. **[DE-21, p. 12].** In accord with case law and the regulations, the Commissioner is only required to state its assessment of the additional evidence, not give a detailed reasoning for its findings. Thus, Plaintiff's argument is without merit.[4]

Notwithstanding the merits of Plaintiff's argument, procedurally, there is no basis to review the Commissioner's decision. The procedural aspects of judicial review of a Commissioner's decision are outlined both by statute and case law. See 20 C.F.R. § 422.210(a) ("a claimant may obtain judicial review of a decision by an administrative law judge if the Appeals Council has denied the claimant's request for review, or of a decision by the Appeals Council when that is the final decision of the Commissioner"); See also Balthis, 2001 U.S. Dist. LEXIS at * 7-8 (stating "when a claimant seeks review by the Appeals Council, the Council first makes a procedural decision to either grant or deny review. If the Appeals Council denies review, that denial renders final the decision of the ALJ. It is thus the decision of the ALJ, and not the procedural decision of the Appeals Council to deny administrative review, that is subject to judicial review"); Califano v. Sanders, 430 U.S. 99, 108 (1977). In this case, the Appeals Council denied review of Plaintiff's case, rendering the ALJ's decision the final decision. Therefore, Plaintiff's only basis for relief is

---

[4] Although Plaintiff asserts that Dr. Ramirez's statement is consistent with much of the medical record and the opinions of her other treating physicians, she does not cite any evidence in support of her contentions. [DE-21, P. 12]. In fact, the record does not reflect that Plaintiff has ever been diagnosed with congestive heart failure or that she was hospitalized for this condition. Instead, Dr. Ramirez's own treatment notes indicate that on several occasions, Plaintiff's cardiovascular results were normal. (Tr. 238, 263, 283). In addition, during the examination that preceded Dr. Ramirez's letter, Plaintiff had no complaints of cardiovascular problems (Tr. 236), and Dr. Ramirez reported that Plaintiff's cardiovascular functions were normal. Id. at 237-238. Furthermore, the evidence also does not support Dr. Ramirez's statement that Plaintiff's difficulties with shortness of breath limit her performance to such an extent that she is incapable of performing simple tasks, or walking 15 feet. Rather, other than intermittent complaints (Tr. 233, 244), Plaintiff has consistently reported that she has not had difficulty with shortness of breath or any other respiratory problems or abnormalities. Id. at 175, 197, 236, 237, 263, 278, 283, 290, 308. Therefore, although the Commissioner is not required to give a detailed explanation of his decision regarding Dr. Ramirez's post-decisional letter, there is not sufficient evidence to support Dr. Ramirez's claims.

16

judicial review of the ALJ's decision.

## Conclusion

For the reasons discussed above, it is **HEREBY RECOMMENDED** that Plaintiff's Motion for Judgment on the Pleadings **[DE-21]** be **DENIED**, Defendant's Motion for Judgment on the Pleadings **[DE-27]** be **GRANTED**, and the final decision by Defendant be **AFFIRMED**.

DONE AND ORDERED in Chambers at Raleigh, North Carolina this 19TH day of October, 2007.

_____
William A. Webb
U.S. Magistrate Judge